Good morning. May it please the Court, I'm Thomas Long, representing the appellants. Yes, Mr. Long. I'd like, with the Court's indulgence, to reserve a few minutes of my time for rebuttal as well. Let's keep an eye on the line. Will do. What we are seeking here in this case is a reversal of the summary judgment granted below on a title insurance policy. This case arises out of a title insurance policy acquired for a premium of $264,000 in connection with the acquisition of a right-of-way that involved the Alameda Corridor. In that title insurance policy, one particular title exception was not shown. Some 70 years ago, a judgment of condemnation was recorded but was not fully indexed in the Office of the County Recorder under the names of all the parties. And as a result, some 70 years later, we're here today. Well, you want to address the threshold question of whether the two cities, who's on the policy? Who are the insured? Okay, I'll be happy to address that, Judge Noonan. The insureds on the policy include the City of Long Beach buying through its Board of Harbor Commissioners and the City of Los Angeles buying through its Board of Harbor Commissioners. We maintain that under the rationale of cases like Historic Smithville and Butera, in addition, the Alameda Corridor Transportation Agency is also an insured, a successor insured. By virtue of its involvement, it is the vehicle, it is the joint power agency through which the cities act as the Board of Harbor Commissioners. Now, of course, the cities had very good counsel. It seems so strange that they didn't add the other entity as insured. Well, there's no explanation in the record as to why that happened. Certainly, Alameda Corridor Agency was in existence at the time the policy was purchased. Certainly, it was foreseeable that that entity, since it was formed for the purpose of operating the corridor, would operate the corridor. And so those are the standards, the tests under Historic Smithville and Butera by which the successor agency becomes the insured. Well, you'd think careful counsel would have said, yes, but let's make sure. Well, certainly, that would have been, hindsight being 20-20, that would have been preferable. Nonetheless, all the appellants are insureds, but also damage was suffered by all the appellants. The title to the property, everyone admits, is not as is shown in the policy. So clearly, we have a case where what was purchased, what the parties thought they were purchasing, is not the same as the title that ultimately ends up in the policy. Let me ask this. You were furnished a map which revealed these easements. We were furnished a valuation map which referenced the sewer pipeline and which the testimony of Mr. Stacey contends revealed the easements. It had numbers on it, and that took you to a verbal description of the nature of those easements. That's what the ValMap showed. Yes, and you had it? We were supposedly provided that prior. Well, is there any doubt that you had it? Well, I think what we have in this case is we have contradictory testimony about what that ValMap showed. No, not at all. That wasn't the question. You did have it. We did have a copy, that's correct, as did the title insurance company. And both we and the title insurance company reviewed it beforehand. It was reviewed in connection with the issuance of the preliminary title report. It was reviewed in connection with the survey. The title officer obviously didn't think it showed an easement because he didn't include it in the preliminary title report. He must have been very careless, but it was there to be seen, there to be read. And also, Los Angeles was the grantee, is that not correct? That's correct. The City of Los Angeles was the grantee, but not as and by and through its Board of Harbor Commissioners. And that's what the definition of the insured is here. I mean, if one is challenged, if the City of Los Angeles is to be challenged with and to have excluded all of the easements it created, why then would the policy show 33 exceptions for easements granted to the City of Los Angeles in Schedule A? Each and every one of those exceptions would be utterly superfluous if one interprets the policy as automatically excluding every easement created by the City of LA. The district court rejected that exclusion, Exclusion 9A, and rejected the idea that there is no coverage here because the easement was created by the City of Los Angeles. Aren't you on a somewhat difficult, if not contradictory, position to insist that it's the Board of Harbor Commissioners because it says through them, and then turn around and say, well, we'll include this other entity, even though it's not even mentioned? On the one hand, you want a very strict construction. On the other hand, you want a very broad expansion. Well, no, I think both are consistent with the plain language of the policy. The broad language does not include the entity. Well, the definition of insured in the policy is defined narrowly. The plain language of the policy defines the insured, notwithstanding the way it was cited by the other parties, defines the insured to be the City of LA acting by and through the Board of Harbor Commissioners and the City of Long Beach. So then why do you want to add another entity? Well, the additional, if the Cities of LA and the City of Long Beach have suffered the damage, and we think we've demonstrated they have in the record, then it's really superfluous to decide whether or not ACTA is also an insured. Now, why did they suffer damage? The title to the property is not what was shown. It cost $7 million to move the pipeline that was located in the sewer easement as a result. Did the other entity bore that cost? No. Well, yes, ACTA bore that cost. That's correct. And the costs that ACTA bears are ultimately the responsibilities of each of the port as a joint powers authority. Pardon? How do we know? ACTA bore the cost. ACTA is, as a joint powers authority, of the two ports, nothing more than the instrumentality of the two ports. It's a separate legal entity. It's a separate legal entity. That's correct, as would a partnership be. I mean, I can't get over it. You're so technical on the Board of Harbor Commissions. Then you say, no, let's read them in for ACTA. Well, the definition of insured in the policy is narrow when it defines the specific insureds, and broad when it defines the successors. How can you be more narrow than identifying who the insured are and it doesn't happen to include ACTA? Well, what the insured includes, by definition of the policy, is the parties identified in the declarations page and those parties who, by operation of law, as distinct from purchase, including but not limited to, and a whole bunch of different ways are stated, acquire an interest in the property. So the definition of insured is both narrow and broad, and there's nothing contradictory about that. The narrow portion of it — What's the operation of law that makes ACTA the — It's operation of law as distinct from purchase, including but not limited to. So it's not confined to obtaining an interest by operation of law. ACTA did not purchase an interest in the property. ACTA, without purchase, through a contract, obtained an interest in the property. Is that included? If you acquire an interest by contract? We contend it is. I think the definition of insured is defined broadly enough. But where does it say that in the policy? If you succeed by contract, you become — It does not use those express words. Well, I think we looked at the policy. We don't usually think of operation of law as being rights derived from a contract. Well, in the flip side, what it says is, by operation of law as distinct from purchase, including but not limited to. The distinction is not whether the transfer is voluntary or involuntary. The distinction is whether, as the historic Smithville case said, whether it was foreseeable that the successor party would have an interest in the property, and whether or not it was an interest that was acquired through purchase or not. And here there was clearly no purchase. Well, aren't there three ways that it could have been acquired? By purchase, by operation of law, or by contract. And the policy does not mention the third way. The policy, in using the phrase including but not limited to, makes it clear it's not intending to mention every single way. The distinction I think the policy is making is what was outlined in the historic Smithville case, which interpreted the same language that we have here. The distinction is, is there really any additional risk here? Is it foreseeable? It certainly was foreseeable that the joint powers authority formed to operate this facility would in fact operate it. Now, in any event, if ACTA is uninsured, then clearly we don't have any issue with the application of Exclusion 9C, whether or not there was damage to the insured claimant. But even if ACTA was not uninsured, this case was bifurcated between liability and damages. We did contend below that the property is not what was shown in the title policy. The owners of the property, the ports, got a property that was not what they intended to purchase, in terms of what was shown in the title policy. So Exclusion 9C should not apply. Nor should the argument apply that the public record in this case, that this easement is not shown by the public record. I think that argument, Exclusion 9B in the policy and also Exclusion 3, is yet another area where the district court committed serious error. The list pendants was properly indexed and recorded. It should have been shown. The judgment, which the district court contends is not part of the public record, if it expunges the list pendants, which everyone admits is in the public record, the state of the public record cannot be determined, except by referring to documents outside the public record. And that is the import of the district court's holding below. And the import of the district court's holding below was to have that impact, was to have the impact that all title insurance policies would expire, essentially after two years, by charging the policyholder with constructive notice. What's relevant here is not whether we saw the vow maps, which the district court didn't rely on, or the valuation maps referred to. We could rely on them. No, you couldn't, because you'd have to find an undisputed issue of fact as to whether or not they showed actual notice. And the testimony of the people who supposedly reviewed them, Mr. Stacey identified two people by name and said other representatives, were that they didn't see the portions of the vow maps, that they were not on actual notice, and they didn't see the portions of the vow maps that showed that there was an easement. Further, the conduct of the title insurance company itself, which also reviewed the vow maps, and the title survey company, which also reviewed the vow maps, neither of which bothered to show the easement, also suggests that the vow maps aren't as clear as some people might think they are. There is clearly a disputed issue of fact there. Well, maybe we send it back down then. That would be a possibility. Another possibility would be these questions involve novel questions of California law, as the district court suggested. We filed, as the panel is no doubt aware, a motion to certify questions to the California Supreme Court. We do not think there is any controlling California authority on any of the questions presented in this appeal. And accordingly, we do not think, without divining as to what California law is, the panel can determine that any of the exclusions apply, or that the panel can determine that the statute of limitations applies. And so we would request that the district court's grant of summary judgment be overturned. And unless there are other questions, I would reserve the remainder of my time. Thank you. Good morning, Your Honors. May it please the Court, my name is Diane Sherman, and I represent the Appali Stewart Title Guarantee Company. With me at council table, I have the Associate General Counsel for Stewart Title. As a preliminary matter, as the panel knows, the appellants have filed a motion to certify to the California Supreme Court. We received that document late last Friday afternoon, because it was served on us by regular mail rather than hand service. Our written opposition will be timely filed on Monday. But as I go through the issues on appeal this morning, I will let the court orally know our position on the motion to certify. The district court granted Stewart Title summary judgment on three distinct and independent grounds. In addition, Stewart Title moved for summary judgment on a fourth ground that the district court declined to rule upon. And I would like to point out that appellants were incorrect when they said that the district court rejected the fourth ground that we moved for summary judgment on. The district court didn't reject it. The district court declined to rule upon it. But we believe the fourth ground that we moved for summary judgment on provides another basis for upholding the district court's decision. If you find for Stewart Title on any of the four bases asserted by Stewart Title. Just remind us very quickly what those four bases are. The first bases, and that's the first one I want to discuss, is the 9C exclusion in the policy for no loss or damage to the insured claimant. The second basis that we moved for summary judgment on is the 9A exclusion for defects created by the insured claimant. The third basis is the Section 3 exclusion for easements not shown by the public record. And the fourth basis was the statute of limitations. But I think it's important to note this Court only, if the Court finds for Stewart Title on any of those four bases, the panel need not even reach the other three bases. I'd like to start this morning, because I believe it ends the case, by discussing the Section 9C exclusion for defect, liens, encumbrances, adverse claims, or other matters resulting in no loss or damage to the insured claimant. And I start with this exclusion because I think it's the easiest and the most clear cut of the exclusions to apply. And as I said, if you uphold the District Court's judgment on this exclusion, then you need not even reach any of the other issues raised below. The question before the Court on the Section 9C exclusion is essentially this. Should the Court enforce the contract made by the parties as to who would be insured under the title policy? The evidence here is undisputed that ACTA and ACTA alone paid the only damages claimed in this action. The alleged $7 million cost to relocate the sewer pipeline. The District Court correctly found that ACTA was not an insured claimant under the terms of the title policy. In arguing that ACTA is an insured claimant, as the panel has pointed out, appellants rely on Section 1A of the title policy, which defines the insureds to include the insureds named in Schedule A and subject to any rights or defenses the company may have had against the named insured, those who succeed to the interest. And it's important to emphasize the interest. I'll get to that in a second. A such insured, and here's a more crucial language, by operation of law, as distinguished from purchase, et cetera. The District Court correctly found that ACTA was not an insured claimant under this language. First of all, ACTA didn't succeed to an interest. The District Court, and let me just quote briefly from the District Court's opinion, the District Court found that ACTA has not succeeded to the interest of either city, but instead possesses rights to construct and operate the Alameda Corridor permit, or the Alameda Corridor pursuant to the use permit. So ACTA didn't succeed to the city's interest as owner of the property. In the out-of-state cases relied upon by the appellant, the original owner was out of the picture. Historic Smithville, which is a trial court opinion from New Jersey, has whatever persuasive effect you choose to give it, but in that case the original owner was out of the picture. That's not the case here. The cities continue to own the property here. Second, ACTA didn't succeed by operation of law. The District Court relied on the Hawkins case for that, and we believe Hawkins is controlling. And as I said in my introduction, our opposition to the request for certification will be timely filed on Monday, but I'd like to advise the Court that in that opposition, we'll be directing the Court's attention to several cases that we just found, including two California Supreme Court cases, which address the issues that appellants contend needs addressing by the California Supreme Court, i.e., the meaning of operation under California law. These additional cases that we'll be submitting Monday with our opposition to the motion to certify all construe the term by operation of law and hold that the term does not encompass voluntary action by the parties, which is exactly what happened here. I'd like to briefly address appellants' argument that ACTA should be viewed as an insured claimant because inclusion of ACTA would not increase Stewart's risk under the policy. In essence, they're trying to graft additional language onto the policy. The policy says it talks about operation of law. They're trying to add so that it would read either you're an additional insured, either you succeed by operation of law, or any old additional party in the world if that party does not increase the insurer's risk. That's not what the language says. And the Court has noted that the parties here were sophisticated. They were represented by sophisticated counsel. The Court cannot read that language into the policy. Is there anything in the legislation giving the cities the authority to create this joint power kind of agreement that would allow them to say that there has been by operation of law that ACTA has taken over? Absolutely not. It was convenient for them to operate under a joint powers agreement, but they were not, in order to build this project, they didn't have to have a joint powers agency. They could have done it without a joint powers agency, and they've never suggested otherwise. It was more convenient for them to do it through a joint powers agency for the simple reason that that allowed them to put all the liability in the joint powers agency and have the joint powers agency float bonds and put the risk entirely on the joint powers agency's bondholders and not on the city's. But that's a voluntary act. They absolutely did not have to construct this project through a joint powers agency. They need legislative authority to create the joint powers agreement? Yes. So without that blessing of the legislature, they could not have built the corridor? No, absolutely not. They did not need the blessing of the legislature to build the corridor. They didn't need to do it through a joint powers agency. If you look at the ñ there's actually three joint powers agreements. They were amended and restated several times. But if you look at all of them, they all say in the whereabouts clauses that the cities had the authority and power to build the corridor, to operate it. They didn't need to do it through a joint powers agency. They did it for their convenience through that way because they wanted to limit their liability. And certainly there's nothing wrong with that. That's very commonly done. But that doesn't make ACTA an additional insured under the terms of the policy. The question of this case is that the cities having neither negotiated nor paid for an endorsement naming ACTA as an additional insured are trying after the fact to read language into the title policy that is not there. The risk that Stuart Title took was defined by the title policy. The four corners of the instrument define the risk. The risk accepted by Stuart Title was the risk of insuring the city of L.A. and the city of Long Beach. That's the risk that Stuart Title accepted. That's the risk that the parties agreed to. That's the contract that this Court should enforce because that's the contract that the parties made. I'd like to just briefly address the Section 3 exclusion for easements not shown by the public record. If your honors find that the Section 9c exclusion applies, your honors don't even have to reach the Section 3 exclusion. But I'll address it briefly anyway. Assuming that the panel reaches the issue of the applicability of the Section 3 exclusion, we do not believe it is necessary to certify any question to the California Supreme Court. We agree that there's no California authority answering the precise question framed by the appellants in their motion to certify. However, as we've cited in our brief, controlling California authority conclusively establishes that an improperly indexed judgment does not give constructive notice. Conclusive California authority further holds that a list penance has no existence apart from live litigation and that once a final judgment has been entered and the statutory time for appeal has expired, a list penance has fully served its purpose. Let me ask you just to kind of set the framework of what information is on the public record. If I were to come into the title insurance company  and say I'm negotiating to purchase this property and I would like to have you do me a preliminary title report. Now, all I've given you is the precise legal description of the property. What would the title company do? Well, I'm not sure it's relevant what the title company would do, but I will tell you. The title company does not search the public record. The title company operates, or most title companies operate by searching. They have a title plant and they search records there, which are not as, to some degree, the records there are not as inclusive as the public record. But why it's irrelevant is what is in. This may be irrelevant. I'm just asking you. Okay. I think that that's, it used to be that title insurance companies thought that they had an obligation to keep the record straight and they worked hard at it. And I know that's not the case now. Title insurance companies sell insurance and they take risks because it's prudent to do that in terms of cost benefit. Well, let me answer your question first. Stewart Title has a plant out in Sun Valley, California, where I've actually had the privilege to go. And it is a large room with many, many file drawers. And some of the documents that are in the public record are in those file drawers. And a title searcher actually, when he gets a parcel, he or she gets a parcel description, they go through those drawers and search the property. But they do this. You have to keep in mind the difference between a title insurer and an abstractor. Oh, I know the difference. Okay. I just want to make clear that the title search that is done is for the title insurer's own, assessing its own risk. It's not for the benefit of the insured. But that's what actually happens. Well, now, would not they have had in one of those drawers a record of an easement. They put the wrong name on it. Something wrong. But it would show up as being an easement on this property. Absolutely. We don't. You missed that. Absolutely. We don't dispute that. Because it had a different railroad company. But if they really looked at the public record, they would have shown an easement granted by a different railroad to Los Angeles that related to that property. No, actually, that's not correct. You could not have found the final judgment by searching the public record. But you could have found it in the title plan. Because the indexing is different in the title plan. It's not indexed in the same way. We don't dispute that both the list penance and the final judgment could have been found in the title plan. I mean, we don't know what happened. We assume that someone just goofed up. I mean, it happens. This was a large, large transaction. There was pressure to close it. There were 45 different parcels to be searched. And somebody just plain missed it. It would have shown up either as an easement granted by Railroad X or Railroad Y. Wrong railroad, but it would have shown up. Absolutely. But we don't think that's relevant at all. Because we had no obligation to search the public record. And that's what Judge Anderson said. The fact that the title insurer may have been negligent can't turn a non-public record into a public record. But isn't there liability if it is in the public record? Yes. Clearly, under that exclusion, yes. If it is in the public record, absolutely. And it's important to keep that distinction in mind. Because what the policy says is it doesn't talk about what's in your title plan. Even though the insurer doesn't use the public record, that's what the policy says. And that's what has to be enforced. So the only question before your honors is, was the final judgment and or the list pendants a public record that gave notice? And we say it's not. The law is undisputed that a misindexed final judgment is not a public record. But it would show up as a public record in respect to that particular piece of property. No. I mean, the cases we have cited are absolutely conclusive on that point. If it's misindexed, it's not a public record. And Judge Anderson found that, and I think that's correct. So then the question becomes, okay, the final judgment was not a public record. Well, does the antecedent list pendants, which was properly indexed, is that a public record? And the cases say no, because once a final judgment has been entered, the list pendants no longer gives notice of anything. Let's go back a moment again, because I'm not quite understanding. What would show in the public record would be a judgment of a grant by the wrong railroad, which relates to this property? No, the public records are not indexed by property. The title plant files are kept by parcel number. The public records are not kept by parcel number. You can't, through the public record, search a particular parcel. You have to search by name. So absolutely it would not show up in the public record. But I want to talk briefly. I think there is a public policy reason for finding that once a final judgment has been entered, the antecedent list pendants no longer gives constructive notice. It encourages a judgment holder to ensure that its judgment is not only properly filed, but properly indexed. Here, of course, if the City of Los Angeles, who was the judgment holder of the final judgment at issue, if the City of Los Angeles had made sure that the final judgment was properly indexed, and there was no reason, when you get a judgment, it's your obligation to make sure that not only do you file it, but you make sure that it's properly indexed. How would they determine that it was properly filed? It's properly recorded. They would check the index and make sure that the clerk indexed it correctly. It would be very easy for them to follow up on that, and they didn't. And here, if they had done that, there would not be an issue of the Section 3 exclusion applying. The only reason that that exclusion applies is because they goofed up, and they didn't make sure that their final judgment was not only filed, but was properly indexed. But as I said, if Your Honors, I think the easiest exclusion to apply is the 9C exclusion, and if Your Honors uphold the district court on that exclusion, you need not even reach the issue of the Section 3 exclusion. I want you to turn your attention to this map that was delivered. I looked at that map, and I could see the easement. I could see who it was between. Absolutely. Why doesn't that end the case? I think it does. I would agree. They asked that this court certify to the California Supreme Court whether the standard is actual notice or constructive notice. And I would agree that it's an open question under California law. But this was actual notice. Exactly. That's why we don't think anything needs to be certified, because we absolutely believe it was actual notice. And all they say in response to that is, well, you know, yeah, we had it, but, you know, we don't remember looking at it. And if you can ---- They acknowledge that they had it. They acknowledge they had it. They claimed in an oral argument just now that there were different views as to what it informed people of. That's absolutely not true. If you look at page 44 of our brief, we cite to the record the only evidence that they submitted, they submitted declarations from two employees that, quote, to the best of their memory, they didn't have any specific discussion with Mr. Stacey regarding the VALMAP depicting the L.A. sewer easement. But they submitted no evidence contracting Mr. Stacey's statement that they requested copies from Southern Pacific of all the custodian number documents, which would be the final judgment, reflected on the various VALMAPs and were provided with such documents. I mean, they're really hanging their hat on, well, it was such a big, you know, transaction, we didn't really understand it or appreciate it. But if that's the case, you could never have actual notice, because they would always say, well, yeah, I had the document in front of me, but, you know, I just didn't look at it. And I don't think that's the standard for actual notice. And on page 45, we've cited some federal cases which talk about that. We cited the Enri Yefren case from the Ninth Circuit. I apologize if I'm mispronouncing it, which says, actual notice may attach if a subsequent encumbrancer is told of the prior interest, hears it discussed, or hears the critical language, or sees a document referring to the interest. They saw the document. They had it in their possession. I don't think the standard is for actual notice is that they appreciated the significance of that. And with that, unless the panel has some more questions, I'll submit. Just let me, you know, the attachments that went to the map, the remarks, the schedule of property. Right. If you go down and read it, I just want to make sure I'm reading it correctly. Okay. I have it in front of me. You have to go down maybe two-thirds of the way. It says grant number, grant or grantee. Right. I had a photocopy. I have a little excerpt of it here. I won't open the big map. I'm talking about this. That's the. The attachments that went to the map. Yes, the schedule, yes. Schedule, right. Yeah, and I believe we reproduced that in the brief at page. Yes, we produced that at page 43 of the brief. Is that what you're looking at? I think so. I'm not sure if this comes from the brief or from the excerpt. Okay. But in any event, if you go down the first page, maybe two-thirds of the way, you come to. It's hard to read, but in any event. That's why we reproduced it. JPRR. Southern Pacific Railroad Company. Is the grantor and the grantee is the city of Los Angeles. Arose from a condemnation action. Yes. Judgment. A judgment was entered on. What's the J8793? That's JB stands for judgment. Judgment. It was entered in judgment book 879-31. And then you go to the next page, or I guess it continues on right across. I think it is. And it explains it's a 280-foot square feet. Is that right? Yes. At ES, and the ES was. Those are coordinates on the map. And if you look on the map at 899 plus 30, you can actually see the broken lines that indicate this. And that's at 37th Street. Right. And then COND. Condemned. For sanitary sewer. Correct. Okay. We urge the panel to affirm the district court's judgment. And as I said, if the panel finds that the district court was right on any of the grounds that it relied upon, the panel need not even read the other issues. Thank you, Your Honor. Thank you very much. Thank you. Appelli is correct that each one of the four independent arguments would be an argument to sustain the district court below. Exclusion 9A was one the district court not only did not rely on but rejected, as I recall, because it was not dispositive, that all it would affect is one of the two insureds in terms of the insured having created the insured claimant having created the easement. So I don't think 9A is something the court should hang its hat on in affirming the district court below. Exclusion 9C, no loss or damage to the insured claimant. Counsel relies upon the Hawkins case and upon some other unnamed cases, which I can't respond to because I haven't seen them. The Hawkins case did not interpret language defining insured that is the same as the language at issue here. But more significantly, I think, the Hawkins case concluded that the corporation that received the property from the two individuals who were named insureds on the policy was not an insured, but that even though the corporation held the property, the two individuals still suffered insurable damage because they were shareholders in the corporation and allowed them to proceed in pursuing their claim against the title insurer. So if Hawkins is controlling authority here, you should still reject Exclusion 9C even if you conclude that ACTA is not an insured. You should conclude that those who have the ownership interest in ACTA, in this case the two ports, can be damaged to the extent that ACTA has been damaged to the extent that the property is not what was described in the title insurance policy. Now, as for actual notice, it is a disputed issue of fact as to whether or not the Valmaps provided actual notice. It's not merely an issue of people saying, you know, I don't remember. The testimony was affirmative by each of the individuals, Kennedy, Goodwin, Nats, the only individuals identified by name by Mr. Stacey, that they did not, they were not aware of the meaning of the Valmaps. They were unaware of the existence, actual existence of the sewer easement until November 1999. Keep in mind what the Valmaps are. All they are is handwritten notations of what the railroad thinks the title to the property is. Okay. They received the maps. Nobody recognized that. Correct. And they received the things that were attachments which explained the map. But let me point out one important thing, and this is shown by the record. Most of the easement running from the port that was acquired by the Alameda Corridor, most of that property, the railroad did not hold in fee simple title. It held it in easement. And the Valmaps don't show that. The Valmaps don't show the true nature of what the property interest is. But it did show these easements. It didn't show an easement. It showed a reference to a judgment of condemnation. If you look at page 43, you read all the words of the description, it doesn't use the word easement. In addition, this property, 37th Street, is the boundary between the city of Vernon and the city of Los Angeles. And I believe one of our declarants testified that one of the things he was aware of, that crossings here would be crossing a city boundary, and that it would be unusual for sanitary sewer lines to cross a city boundary. All that being said, if you get handwritten notations from me, and you're buying a piece of property from me, and the handwritten notations put down what I think is the state of title of the property, that's not public record. That's not a copy of the public record document. We then in turn said, all right, the vow maps, we've got everything, we're going to do a title, we're going to have a preliminary title report done, title search done, title survey done. We had all of those things done. And they showed no evidence of the sewer easement. Now, I recognize this is not an issue of negligence, reliance on the search the title insurance company did. I think the record is clear the title insurance company did no search here. We're not making a claim for negligence. The claim is a strict liability claim in contract under the policy, and the state of the property is not as it was described in the policy. Now, we've talked about what is in the public record, and the cases that Pelley relies on, Lewis, Hochstein, those cases repeatedly refer to the concept that an improperly indexed document is not considered to be part of the public record. Why? Because it cannot be found. Well, we know here that this document, as counsel admitted, would have been found if a search had been done of the very same title plant they use. Moreover, the list pendants has on it the case number. So had they found the list pendants, if they'd searched instead of the title plant, they'd searched the grantor grantee index, they'd have found the list pendants, and they could have followed through on the list pendants and checked the court record. And they admitted that in some other contexts, they've admitted in the record that, in fact, that's what they do. So in this case, to say the judgment is not a public record because it's improperly indexed, relying on cases that say improperly indexed documents are not part of the public record because they cannot be found is silly. Of course the sewer easement could be found. And it's not the fault of the city it wasn't found here. It's the fault of the insurer that collected a quarter of a million dollar premium and didn't find it. So, you know, it's not an issue of who's negligent on one side or the other. It's an issue of what was purchased, what should have been shown in the title insurance policy. What is the liability under the title insurance policy? Unless there are other questions, I'll submit on that, Your Honor. No, I don't believe so. Thank you very much. Thank you for your arguments. They're very helpful. I appreciate it. The matter will be submitted and that ends our session for today and for the week. Thank you very much. All rise. This Court, this session stands adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: B. Fletcher, Noonan, Paez